1
2
3
4

JUSTIN KIRK TABAYOYON, S.B.N. 288957
**LAW OFFICES OF JUSTIN KIRK TABAYOYON**
1000 North Texas Street, Suite A
Fairfield, CA 94533
Telephone: (707) 726.6009
Facsimile: (707) 312-8790
justin@tabayoyonlaw.com

5
6
7

Attorney for Plaintiff, CHRISTOPHER PUHR

8
9

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| CHRISTOPHER PUHR,<br><br>    Plaintiff,<br><br>v.<br><br>ROGER CANADY and DANIEL TORRES in their individual capacities and in their official capacities as police officers for CITY OF VACAVILLE; and DOES 1-50, inclusive, individually and in their official capacities as peace officers for CITY OF VACAVILLE, jointly and severally,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

22

**JURISDICTION**

23
24
25

1. This action is brought pursuant to Title 42 U.S.C. §§ 1983 and 1988; the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by Title 28 U.S.C. §§ 1331 and 1343.

26

**VENUE AND INTRADISTRICT ASSIGNMENT**

27
28

2. The unlawful acts and practices alleged herein occurred in the City of Vacaville, County of Solano, California, and this action is properly assigned to the United States District Court for

1

the Eastern District of California. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

3. Plaintiff CHRISTOPHER PUHR ("PUHR") was at all relevant times herein mentioned, a competent adult resident of the State of California.

4. Defendant CITY OF VACAVILLE ("CITY"), California, is a public entity established by the law and Constitution of the State of California, and owns, operates, manages, directs, and controls the City of Vacaville Police Department ("VVPD") which employs the defendants in this action. CITY is required by California Government Code Section 825 to defend and indemnify its employees against any claim or action for an injury arising out of an act or omission occurring with the scope of employment with CITY.

5. At all times herein mentioned, Defendant ROGER CANADY ("CANADY") was employed by the City of Vacaville Police Department and acting under the color of state law and as the employee, agent, or representative of the City of Vacaville Police Department. This defendant is being sued in his individual capacity and his official capacity as a peace officer for the City of Vacaville Police Department, and CITY is required to indemnify this defendant pursuant to Government Code Section 825.

6. At all times herein mentioned, Defendant DANIEL TORRES ("TORRES") was employed by the City of Vacaville Police Department and acting under the color of state law and as the employee, agent, or representative of the City of Vacaville Police Department. This defendant is being sued in his individual capacity and his official capacity as a peace officer for the City of Vacaville Police Department, and CITY is required to indemnify this defendant pursuant to Government Code Section 825.

7. Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Upon ascertaining the identity of a DOE defendant, Plaintiff will amend this complaint or seek leave to do so by inserting the true name of such "DOE" defendant.

8. Plaintiff is informed and believes and thereon alleges that each DOE defendant is responsible in some manner for the injuries and damages set forth herein. At all times

mentioned, each named DOE defendant was the agent, employee or otherwise a co-venturer of CITY, and in doing the things alleged, was acting under the color of state law and within the course and scope of the agency or employment and with the actual or implied permission, consent, and approval of CITY.

9. In doing the acts alleged herein, defendants, and each of them, acted within the course and scope of their employment with CITY. Due to the acts and/or omissions alleged herein, defendants, and each of them, acted under the color of authority and/or the color of law. Due to the acts and/or omissions, alleged herein, defendants, and each of them, acted as the agent, servant, employee, and/or in concert with each of said other defendants herein.

**GENERAL FACTUAL ALLEGATIONS**

10. All allegations made in this complaint are made on information and belief and with the reasonable belief that discovery will provide evidence supporting the factual allegations.

11. On October 7, 2019, CHRISTOPHER PUHR was peacefully enjoying his Constitutional liberties and freedoms in the United States of America inside his home at 279 Arlington Way in Vacaville, California.

12. While peacefully enjoying his liberty inside his home, PUHR noticed officer CANADY outside his home molesting his vehicle and exited his home to investigate. Suddenly, CANADY, armed with a firearm, rapidly and bizarrely began accusing him of being on drugs and making demands such as to view his arms for track marks of drugs. PUHR was effectively immediately detained as soon as he exited his home and without reasonable suspicion of any articulable crime. After that, he was quickly arrested, and the garage of his home was searched without consent, without a warrant, and without exigent circumstances, amounting to an unconstitutional search of his home.

13. After that, CANADY and TORRES obtained a search warrant for PUHR's residence and supported it using the very evidence obtained during their initial warrantless search of the garage of his residence which they described as an innocent "protective sweep" rather than a warrantless search. Later in this proceeding, Plaintiff may ask the court to determine as a matter of law it was not a protective sweep and was instead a warrantless search.

14. CANADY and TORRES obtained and executed the search warrant on PUHR's residence. PUHR was charged with some crimes, but all charges were dismissed on May 4, 2021, by the Honorable Judge Carlos Gutierrez of the Solano County Superior Court on the request of the prosecutor following a suppression motion by Plaintiff.

15. According to the search warrant application penned by TORRES, in July of 2019, an "anonymous reporting party" reported to an *unidentified person* (the writing is in the passive as if who this anonymous person reported the information to is of no significance) that the Plaintiff was selling methamphetamine from his apartment.

16. The search warrant request contained an anonymous conversation between two anonymous people referred to as confidential informants. Plaintiff has not been able to obtain a fully redacted version of the affidavit, so he is not sure of the full content. But from what Plaintiff has been able to discover, there are conclusory allegations made in an anonymous conversation between two unknown people at an unknown time, place, and location. What was declared in the affidavit and has been disclosed to Plaintiff through his criminal prosecution Plaintiff argues amounts to an anonymous person reporting to *unknown person* a conclusory allegation with no factual support.

17. At the time CANADY tricked PUHR into coming out of his house, PUHR had no clue of CANADY'S true motivation or why he was there and, on information and belief, that getting PUHR to admit to consuming drugs whether or not it was true was a big part of his plan to gain entry into PUHR'S home. CANADY manipulated PUHR into believing that CANADY would go away after writing him a ticket and/or leave him alone if he acquiesced and, therefore, made the statement CANADY demanded which was that he was a drug user and had used drugs earlier that day. Had PUHR known why CANADY was really there and asking that question – to make up any excuse to search his home – he would not have been manipulated by CANADY to say such a thing; but PUHR was ignorant of CANADY 'S secret plan to search his residence by any means, including unconstitutional means.

18. Officer CANADY crossed the line from investigation to coercion with his aggressive tactics that no reasonable officer would employ. When CANADY first accused PUHR of being

*Complaint for Violations of Civil Rights*

on drugs, PUHR asserted to CANADY that he was not on drugs. CANADY was not satisfied with that answer and actively sought to change it. CANADY very aggressively bullied and/or manipulated PUHR into changing his story to say that he had consumed drugs earlier that day using fear and intimidation that amounted to coercion intending and knowing he would use those statements in support of a warrant application to search PUHR's home.

19. PUHR did not know CANADY'S true, unrevealed intension to search his home without probable cause for a warrant and the consequence of saying what CANADY was leading him to say, but CANADY knew what he was doing before he got there – he was looking for any excuse to enter PUHR'S home and search it, with or without probable cause and with or without a warrant. And that is what he did.

20. PUHR was presented with a stranger asserting authority, barking demands at him, demanding to see his arms, and making accusations against him. Most reasonable people would have told such a stranger to stop bothering them and to leave them alone, but this stranger had a badge, gun, and authority. The combined effect of the circumstances was such that Plaintiff was under duress. CANADY used and abused his badge, gun, and authority to intimidate and coerce PUHR to say the words officer CANADY wanted him to stay but were not words he would have chosen to say if he was not under duress because of CANADY's coercion. PUHR'S statements on October 7, 2019, were not voluntary. They were coerced.

21. When CANADY was done bullying PUHR and had arrested him, he quickly bullied Megan Desiree White using his same unconstitutional tactics, but he went even further with her. He caused her to change her first, original statement that she had not used drugs by essentially threatening her using her three-month-old child. Using that rather unconstitutional tactic, he bulled her into giving him limited consent to search the home, but she didn't have access and could not provide consent to search the entire home.

22. During PUHR's criminal prosecution, the Solano County District Attorney's Office produced a particular video file to the Plaintiff through discovery in MP4 format. The computer file is named Puhr_11550-5. It contains video from Officer Canady's body camera on October 7, 2019. The relevant portion of the video is from minutes 14:00 to 27:00. Plaintiff believes the

video presents a triable issue a fact for a jury to decide whether coercion occurred and whether the following omissions from in following search warrant affidavit(s) was/were material. No reasonable officer would use such unconstitutional coercions to search a residence without a search warrant or allow material omissions in a search warrant application. Attached as **Exhibit A** and fully incorporated herein is an *uncertified* transcript created from the video file with reference to the time in the video.

23. Officer CANADY'S bullying tactics were calculated to knowingly force false admissions he wanted/needed to obtain a search warrant. It is very relevant to note CANADY did not ultimately arrest Megan Desiree White for being under the influence of drugs and left the three-month-old child alone with her despite all his feigned, alleged concern for the child (see incorporated transcript). On information and belief, his aggressive, legally questionable, and highly relevant tactics were knowingly, intentionally, and purposely omitted from the search warrant application in this case.

24. Both officers CANADY and TORRES had an affirmative duty to ensure the search warrant application and affidavit(s) they presented to the court in support of the search warrant they sought had the complete set of material facts known to them and they did not. Instead, on information and belief, they purposely omitted material facts and conspired to obtain a search warrant by omitting those material facts.

25. CANADY and/or DOES 1-50, inclusive, boldly did not even wait for a search warrant to be signed by a judge to force entry to the secured area of the home for which they certainly knew they explicitly did not have consent to enter and search. Instead, CANADY and DOES 1-50, inclusive, illegally entered PUHR'S garage without consent and without a warrant to allegedly perform what is rather blatantly dishonestly described in the search warrant application as a "protective sweep" of PUHR'S home.

26. The alleged "possibility" of there being a threatening person inside the home was based on CANADY'S pure imagination and was completely unsupported by any facts whatsoever known to him that would support the logical conclusion there was an individual actively concealing themselves in the garage of the home.

6

*Complaint for Violations of Civil Rights*

27. On information and belief, CANADY knew he did not have facts sufficient for a successful warrant application. He used coercion to create the facts that he could and knew TORRES' search warrant application that was submitted on October 8, 2019, would omit material exculpatory facts by his design.

28. There were no facts within his personal knowledge of any active threat or exigent circumstance instead PUHR's garage giving him authority to search PUHR's home without a warrant and without consent. He did not have personal knowledge of any facts that should have allowed him to force entry to the garage of PUHR'S residence on October 7, 2019, without a warrant and he knew it. He entered without a warrant to obtain those missing facts. That is clearly not the proper sequence of events.

29. On information and belief, in conspiracy with Vacaville Police is officer TORRES, who penned the search warrant affidavit, Officer CANADY caused a warrant to be requested from the Honorable Judge Shauna Chastain of the Solano County Superior Court who issued such a warrant without knowing the omitted facts withheld through conspiracy by CANADY and TORRES.

30. On information and belief, the two officers conspired to withhold from the affidavit in support of the search warrant request that both PUHR and Megan Desiree White initially immediately denied being under the use of drugs and only changed their story after CANADY'S coercive tactics were used and they were both placed under duress. Those were material omissions that would have been objectively highly relevant to an unbiased, reasonable judge reviewing a search warrant application. Their inclusion or omission more likely than not would have had a material influence on a reasonable judicial officer's decision whether to issue a search warrant. The omission of those facts was calculated, dishonest, and intentionally misleading.

31. PUHR has permanent and ongoing fear and anxiety as a direct result of the constitutional violations described in this complaint.

*Complaint for Violations of Civil Rights*

**FIRST CAUSE OF ACTION**

**Civil Rights**

**42 U.S.C. Section 1983 / Unconstitutional Seizure**

(Against CANADY)

32. Plaintiff restates and incorporates the preceding and subsequent paragraphs as if they were set forth here in full.

33. Plaintiff brings this civil rights cause of action under the 4th Amendment as applied by the 14th Amendment related to the unconstitutional seizure of his person on October 7, 2019, and thereafter.

34. On October 7, 2019, Plaintiff's person was seized by CANADY. CANADY handcuffed PUHR, placed him into the back of his patrol vehicle, and transported PUHR to the Solano County Jail. This deprived PUHR of his liberty and freedom for a considerable amount of time.

35. The seizure of Plaintiff's person was in violation of Plaintiff's Constitutional Rights and without probable cause. No reasonable similarly situated police officer(s) would have perceived probable cause and caused Plaintiff's person to be seized based on the information/evidence available to the officers at the time of seizure of Plaintiff's person and/or sought an arrest warrant or search warrant based on the available and known facts.

36. As a CITY employee acting in the course and scope of his employment with CITY, CITY is required to CANADY for any settlement or judgment in this matter pursuant to Government Code Section 825.

37. Plaintiff seeks punitive damages directly against CANADY for the unconstitutional seizure of his person.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**

**Civil Rights**

**42 U.S.C. Section 1983 / Unreasonable Detention**

(Against CANADY)

38. Plaintiff restates and incorporates the preceding and subsequent paragraphs as if they

8

1    were set forth here in full.

2    39. Plaintiff brings this civil rights cause of action under the 4th Amendment as applied by

3    the 14th Amendment related to his unreasonable and unconstitutional detention on October 7,

4    2019.

5    40. As a CITY employee acting in the course and scope of his employment with CITY,

6    CITY is required to CANADY for any settlement or judgment in this matter pursuant to

7    Government Code Section 825.

8    41. Plaintiff seeks punitive damages directly against CANADY for his unreasonable and

9    unconstitutional detention on June 30, 2019.

10    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

11    **THIRD CAUSE OF ACTION**

12    **Civil Rights**

13    **42 U.S.C. Section 1983 / Unconstitutional Search**

14    (CANADY; TORRES; and DOES 1-50)

15    42. Plaintiff restates and incorporates the preceding and subsequent paragraphs as if they

16    were set forth here in full.

17    43. Plaintiff brings this civil rights cause of action under the 4th Amendment as applied by

18    the 14th Amendment related to the unconstitutional search of his person and his residence on

19    October 7, 2019, and/or October 8, 2019.

20    44. On October 7, 2019, and/or October 8, 2019, CANADY; TORRES DOES 1-50,

21    inclusive, unconstitutionally searched Plaintiff's person and residence without probable cause

22    after CANADY caused TORRES to apply for a search warrant knowing the information within

23    the resulting affidavit in support of the search warrant was fabricated, false, misleading, and/or

24    incomplete.

25    45. As CITY employees acting in the course and scope of their employment with CITY,

26    CITY is required to indemnify Plaintiff regarding any settlement or judgment in this matter

27    pursuant to Government Code Section 825.

28    46. Plaintiff seeks punitive damages directly against CANADY; TORRES; and DOES 1-50

for searching and/or causing him to be unreasonable and unconstitutionally searched on October 7, 2019, and October 8, 2019.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**Civil Rights**

**42 U.S.C. Section 1983 / Violation of Plaintiff's Due Process Rights**

(Against CANADY; TORRES; and DOES 1-50)

47. Plaintiff restates and incorporates the preceding and subsequent paragraphs as if they were set forth here in full.

48. The acts described herein were directed toward Plaintiff, were intentional and material, constituted a wrongful seizure and search, detention, and prosecution and were a violation of Plaintiff's due process rights as provided by the 14th Amendment.

49. As CITY employees acting in the course and scope of their employment with CITY, CITY is required to indemnify these defendants regarding any settlement or judgment in this matter pursuant to Government Code Section 825.

50. Plaintiff seeks punitive damages directly against CANADY; TORRES; and DOES 1-50, inclusive, for violating his due process rights.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**Civil Rights**

**42 U.S.C. Section 1983**

**Constitutional Right Not to be Deprived of Liberty as a Result of Evidence Fabrication**

(Against CANADY; TORRES; and DOES 1-50)

51. Plaintiff restates and incorporates the preceding and subsequent paragraphs as if they were set forth here in full.

52. Plaintiff brings this civil rights cause of action under the 4, 5th, 6th and 14th Amendments related to the fabrication of evidence against him resulting a search warrant being issued for his residence without real probable cause.

*Complaint for Violations of Civil Rights*

53. In committing the acts complained of herein, the defendants acted, individually and/or conspiratorially, under the color of state law to deprive the plaintiff of certain constitutionally protected rights under the 4, 5th, 6th and 14th Amendments to the Constitution of the United States, including but not limited to: (a) the right to be free from unreasonable searches and seizures; (b) the right not to be deprived of liberty without due process of law; (c) the right to not be deprived of due process of law, both procedural and substantive; (d) the right to be free from malicious prosecution without probable cause; and (e) the right to a fair trial.

54. Specifically, the plaintiff had the Constitutional Right not to be deprived of his from warrantless and/or unreasonable searches, liberty, liberty interests, and a fair trial as a result of the fabrication of false evidence by a government officer acting in an investigatory capacity especially where that officer foresees that he himself will use the evidence with a resulting deprivation of liberty or constitutional violation.

55. As factually alleged herein, and on information and belief, CANADY; TORRES; and DOES 1-50 fabricated evidence against PUHR to support a search warrant and arrest PUHR.

56. As CITY employees acting in the course and scope of their employment with CITY, CITY is required to indemnify these defendants regarding any settlement or judgment in this matter pursuant to Government Code Section 825.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against each defendant herein, jointly and severally:

a. special and general damages in an amount to be determined according to proof and which is fair, just, and reasonable;

b. for punitive damages, as permitted by law and according to proof, as to defendants CANADY; TORRES; and DOES 1-50, inclusive;

c. all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 USC §§1983, 1988, and as otherwise may be allowed by state or federal law;

d. such other relief as this Court deems appropriate.

*Complaint for Violations of Civil Rights*

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a trial by jury as to all issues and claims for relief.

3

4

Dated: October 6, 2021.          **LAW OFFICES OF JUSTIN KIRK TABAYOYON**

5

/s/ Justin Kirk Tabayoyon

6

By:    _____

7

JUSTIN KIRK TABAYOYON
Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Complaint for Violations of Civil Rights*

# EXHIBIT A

Officer Canady (15:45):
What's your name?

Meagan White (15:46):
Megan.

Officer Canady (15:46):
Megan. Come over here in the shade real quick.

Meagan White (15:47):
Yeah, What's going on?

Officer Canady (15:49):
Mr. Chris.

Meagan White (15:50):
Chris.

Officer Canady (15:51):
Chris is gonna go down to the police department with me real quick, because he's been using too many drugs. And, that's no good. Especially with all this problems, he wanted me to leave this here with you. His wallet and his

Meagan White (16:06):
How long has he been using drugs?

Officer Canady (16:08):
He can't use Meth its against the law.

Meagan White (16:09):
Literally just woke up.

Officer Canady (16:11):
Nah, he used Meth earlier today.

Meagan White (16:12):
Really?

Officer Canady (16:13):
He says that, he uses Meth in the house, and I was, Who lives there? And he said his daughter and you. You're his babies?

Meagan White (16:22):

I'm his girlfriend.

Officer Canady ([16:23](#)):
Girlfriend.

Meagan White ([16:24](#)):
Yeah.

Officer Canady ([16:24](#)):
Obviously I have a concern with that because I have a concern any time that there's paraphernalia laying around, and drugs being used

Meagan White ([16:30](#)):
He's never done that around me, I don't

Officer Canady ([16:32](#)):
Yeah.

Meagan White ([16:32](#)):
That's a little

Officer Canady ([16:35](#)):
Does this surprise you to know that he uses Methamphetamine?

Meagan White ([16:37](#)):
That one? Yes. I know he's had some past problems that's why he moved out to California-

Officer Canady ([16:44](#)):
Okay.

Meagan White ([16:44](#)):
But that was before he met me. So..

Officer Canady ([16:45](#)):
Okay. How about you, What's your exposure to methamphetamine?

Meagan White ([16:50](#)):
I've seen it.

Officer Canady ([16:50](#)):
Okay.

Meagan White ([16:50](#)):

But not like, not with him.

Officer Canady ([16:52](#)):
**Yeah, You don't use it?**

Meagan White ([16:54](#)):
**No.**

Officer Canady ([16:54](#)):
**You've never used it?**

Meagan White ([16:55](#)):
**No, not at all. I don't use it at all.**

Officer Canady ([16:55](#)):
**Okay.**

Meagan White ([16:59](#)):
Is he?, Does it have anything to do with his car? Or?

Officer Canady ([17:03](#)):
No, they, it's kind of a long story. The deal is that, this house is a problem house. People use drugs, coming and going and then, neighbors are saying that, oh this house is also, people from this house are coming over her to visit this house and its becoming like a whole issue.

Meagan White ([17:18](#)):
One of the guys works on the car with him but in, then someone does our yard.

Officer Canady ([17:22](#)):
Nah, he told me. He told me that people come over here, join yous and just hang out sometimes.

Meagan White ([17:26](#)):
Okay.

Officer Canady ([17:26](#)):
It's not a huge issue. What you have to understand is that

Meagan White ([17:31](#)):
It's a huge issue.

Officer Canady ([17:32](#)):
It's gonna stop.

Meagan White (17:33):

Yeah.

Officer Canady (17:33):

It's gonna stop probably today because I'm going to arrest every single person that I possibly can that is in this general vicinity of the neighborhood.

Meagan White (17:42):

Okay.

Officer Canady (17:42):

Because these problems got to stop the neighbors don't deserve it.

Meagan White (17:44):

No, I have a kid, I definitely handle my issues.

Officer Canady (17:44):

Your daughter doesn't deserve it. Okay, Who's house is this?

Meagan White (17:51):

Well it's not, he's doesn't own it he rents, but I don't know the owners name.

Officer Canady (17:55):

Who's in charge of the house? Is it you?

Meagan White (17:56):

That would be Chris.

Officer Canady (17:57):

Chris in charge of the house?

Meagan White (17:59):

Yes.

Officer Canady (17:59):

And, What's your name?

Meagan White (18:01):

Megan. M E A G A N

Officer Canady (18:06):

And, Meagan is your last name?

Meagan White ([18:06](#)):

White. W H I T E

Officer Canady ([18:11](#)):

How old is the child that lives here?

Meagan White ([18:12](#)):

She is 3 months. She just turned 3 months.

Officer Canady ([18:14](#)):

Oh my goodness. She's in there by herself with all the dope and the dogs?

Meagan White ([18:18](#)):

No she's in there with me and she's in bed right now. Sleeping.

Officer Canady ([18:23](#)):

Okay, okay. And, What's your birthday?

Meagan White ([18:24](#)):

12/15/85, literately just got our of the shower.

Officer Canady ([18:27](#)):

Alright. We will get you out of here as soon as we can.

Meagan White ([18:28](#)):

I'm sorry.

Officer Canady ([18:28](#)):

What's your, are you on probation or have you been arrested.

Meagan White ([18:31](#)):

I've never no, not at all.

Officer Canady ([18:32](#)):

Okay.

Meagan White ([18:32](#)):

Like I'm just going back, I'm just going back from maternity leave.

Officer Canady ([18:33](#)):

2, 7, 27, 9 check

Meagan White ([18:41](#)):

[inaudible 00:18:41]

Officer Canady ([18:41](#)):

First is White, like the color William Henry Adam Tom Edward. First is Megan Mary Edward Adam George Adam Nora. Date of birth 12/15/85. White female

Meagan White ([18:48](#)):

I got a ticket once.

Officer Canady ([18:53](#)):

I care about tickets

Officer Canady ([18:53](#)):

I care about things that are dangerous.

Meagan White ([18:55](#)):

No I agree. I can go get her but she's sleeping right now.

Officer Canady ([19:00](#)):

No, I don't want to, I don't see a need to do that.

Meagan White ([19:02](#)):

A dangerous place at all it's not.

Officer Canady ([19:07](#)):

It's just you two who live here.

Meagan White ([19:09](#)):

Right now, Yes.

Officer Canady ([19:10](#)):

Good.

Meagan White ([19:10](#)):

I think we have, we've been trying to get a room mate. And I feel like a friends staying but I don't know if he's going to be moving with us at all.

Officer Canady ([19:17](#)):

Okay.

Meagan White ([19:18](#)):

He's not right, he's at work right now though.

Officer Canady ([19:22](#)):

Okay. And you guys-?

Meagan White ([19:23](#)):

It's kind of like a trial.

Officer Canady ([19:25](#)):

All right. How many dogs you got in the house?

Meagan White ([19:27](#)):

We have 2. Well I have one dog, the one whose in the kennel, the big one. And then we have a small one

Officer Canady ([19:31](#)):

It's pit bull or what is it?

Meagan White ([19:32](#)):

She's outside, he's a Mastiff. King Corsive Mastiff.

Officer Canady ([19:33](#)):

King Corsive Mastiff.

Meagan White ([19:35](#)):

He's friendly. But he's a guard dog, he's specifically

Officer Canady ([19:37](#)):

Yeah, I understand that.

Meagan White ([19:37](#)):

He's like very protective of me and the baby.

Officer Canady ([19:47](#)):

Okay. My issue, is that, bad things are going on in this house.

Meagan White ([19:54](#)):

Okay.

Officer Canady ([19:55](#)):

Drugs are being used. Being at some low level, dealt and moved in and out of this house. I don't think that's a problem for you, but it is a problem for you because-

Meagan White ([20:05](#)):

No, if that's what's happening, I need to know that too-

Officer Canady ([20:08](#)):

2, 7

Meagan White ([20:09](#)):

I'm not aware of, a lot of.

Officer Canady ([20:14](#)):

Copy, thanks. We also heard, mention of stolen iteams that are being kept in this house from people that bring items over here, coming out of there. What do you know about that?

Meagan White ([20:27](#)):

No stolen iteams that I know of. I know he just bought the car from someone and he has a title for that, that's been the only new thing that's really shown up here. And, I mean

Officer Canady ([20:42](#)):

How about any kind of guns, any kind of guns running around here?

Meagan White ([20:44](#)):

No. I mean we have a pelet gun.

Officer Canady ([20:44](#)):

Pelet gun.

Meagan White ([20:47](#)):

Like I have a pelet gun that we usually play around with in the back.

Officer Canady ([20:49](#)):

Okay.

Meagan White ([20:51](#)):

That's mine. That's like a little...

Officer Canady ([20:52](#)):

Any riffles or hand guns?

Meagan White ([20:54](#)):

I think he used to have some but, I don't, he doesn't them anymmore he got them taken away I think, the last time he had a...

Officer Canady ([21:00](#)):

That's not what I heard.

Meagan White ([21:01](#)):

Okay. Well, I, If he has them then they're locked up and secure. But, we don't have guns in the house. Laying about.

Officer Canady (21:08):
Okay.

Meagan White (21:09):
I know he used to have a riffle, a long time ago but I don't know if he ever got that one back.

Officer Canady (21:15):
Can you show me where he keeps his guns locked up?

Meagan White (21:17):
No, because I don't know where he would, if he has those guns locked up.

Officer Canady (21:24):
Okay. All right.

Meagan White (21:24):
He has like, he has areas of the house that he, like that is where he works and does stuff. I don't

Officer Canady (21:29):
**Okay. Let me see your wrist real quick.**

Meagan White (21:30):
**Extremely, thrown off here, sorry.**

Officer Canady (21:45):
**Your pulse is really, really high.**

Meagan White (21:52):
**Yeah. I have a cop and my boyfriend getting arrested and I'm about to go back to my job right now, I'm kind of a little freaked out with what's going on.**

Officer Canady (22:03):
**Yeah, your pulse is like really**

PART 2 OF 4 ENDS [00:22:04]

Meagan White (22:03):
**Little freaked out, what's going on, um-**

Officer Canady (22:03):

**Yeah. Uh, your pulse is like really, really high. Like, unusually high.**

Meagan White ([22:06](#)):
Okay.

Officer Canady ([22:07](#)):
**So, what I'm getting at- what I'm getting at, I'll be honest with you, your pulse is as high as someone who's been smoking meth recently.**

Meagan White ([22:12](#)):
Okay.

Officer Canady ([22:13](#)):
Okay? So, that's where I'm at. And- and the reason-

Meagan White ([22:16](#)):
I mean-

Officer Canady ([22:16](#)):
And hold on, hear me out.

Meagan White ([22:17](#)):
Okay

Officer Canady ([22:17](#)):
**This is really- this is really, really gonna be important for you, for the next, um, immediacy of your life, okay? Um, I've been doing this job for a long time, nearly 20 years, okay? When it comes to, um, drug use, this is something I see every single day.**

Meagan White ([22:33](#)):
Mm-hmm (affirmative).

Officer Canady ([22:34](#)):
**Day in, day out. And the problem is that people get scared, and I get it, and they lie to me. And the problem is, is you have a small issue that becomes bigger by lying to me. And then once someone lies to me, I get really, really upset. I take it personal**.

Meagan White ([22:47](#)):
**Yes.**

Officer Canady ([22:47](#)):
**Then the way I deal with that is I enforce the- the law to the absolute letter, and I won't cut any breaks because I get lied to, okay? People that go, "Yeah, I'm, you know, I been fighting a problem,**

**blah, blah, blah, understand this," that's a different situation, usually it involves like, a ticket or a warning, I go about my business. I don't like being lied to.**

Meagan White ([23:05](#)):
**Yes.**

Officer Canady ([23:05](#)):
**Okay? So what you and I are gonna do is, we're gonna pretend that what just happened didn't just happen, okay? We're gonna go back to me checking your pulse, and me telling you your pulse is high, as high as someone who used drugs.**

Meagan White ([23:16](#)):
**Okay.**

Officer Canady ([23:16](#)):
Okay? Then what you're gonna tell me is the truth, okay?

Meagan White ([23:19](#)):
**I, I'm-**

Officer Canady ([23:19](#)):
**You're not gonna tell me about why your pulse is high because you're scared, okay?** So I wanna hear the truth about what's going on, **tell me about your problem**. Go.

Meagan White ([23:25](#)):
U**m, I had a problem before I had a baby, and I stopped when I had a baby** 'cause obviously I'm not gonna carry a child that has that.

Officer Canady ([23:36](#)):
Mm-hmm (affirmative).

Meagan White ([23:37](#)):
Um, but honestly, since I've been pregnant and stuff like that, like I- I mean, I can't say I haven't been like, around it, but it's not something I want around my kid or myself. And it's been a struggle to kinda get other people onboard with that, like my boyfriend.

Officer Canady ([23:57](#)):
Mm-hmm (affirmative).

Meagan White ([23:57](#)):
And um, and I am actually, absolutely like, nervous right now too though, like

Officer Canady ([24:04](#)):
Oh, I'm sure you are nervous.

Meagan White ([24:06](#)):

Last time I was at the doctor, is like, he even said it was very high. Um, but I've had issues with blood pressure, I've had issues with everything since my pregnancy, so-

Officer Canady ([24:16](#)):

Is it high blood pressure?

Meagan White ([24:17](#)):

I've had high blood pressure.

Officer Canady ([24:17](#)):

Yeah, this isn't about high blood pressure. High blood pressure is completely different.

Meagan White ([24:20](#)):

No, I know, it's a different

Officer Canady ([24:22](#)):

This is about high- this is about high pulse. This is-

Meagan White ([24:23](#)):

Pulse, this is like, if I was running a marathon or whatever.

Officer Canady ([24:24](#)):

Or if you're smoking a- a stimulant.

Meagan White ([24:26](#)):

Okay. Sighs.

Officer Canady ([24:28](#)):

**Okay. So, here's the issue. Um, before I delve into these tests further, which I know how they're gonna end, um, I'll tell you right now, I know you used meth today, 100 percent. I'll- I'll bet my career on it, and I'm willing to bet your freedom and that of your child's freedom on it, that you used meth today. I have a real problem with that, okay?**

Meagan White ([24:44](#)):

**Yeah, yes, yes, yes, yes.**

Officer Canady ([24:45](#)):

Because how are you gonna care for your child while you're on meth, okay? So, that being said-

Meagan White ([24:53](#)):

I mean-

Officer Canady ([24:54](24:54)):

You, listen to me.

Meagan White ([24:54](24:54)):

**Yes.**

Officer Canady ([24:56](24:56)):

Listen to me. I am not here because of you, okay? I'm here for other reasons, very specific reasons, okay? **And I don't want to have to use you as a- as a speed bump, but I will.**

Meagan White ([25:09](25:09)):

**Mm-hmm (affirmative).**

Officer Canady ([25:09](25:09)):

Okay? So, he's already going to jail, already.

Meagan White ([25:14](25:14)):

Mm-hmm (affirmative).

Officer Canady ([25:15](25:15)):

That's a done deal, okay? He's already going to jail. Um, **when I leave here, I'm also leaving here with guns that are in this house, okay?**

Meagan White ([25:25](25:25)):

Okay.

Officer Canady ([25:25](25:25)):

Okay? So, the question-

Meagan White ([25:26](25:26)):

Can you ask him, then? 'Cause I don't-

Officer Canady ([25:28](25:28)):

Mm-mm (negative), no. Here's the deal. 'Cause I- I know where they are. **Um, here's the deal. I'm- I'm either gonna leave here with you or without you.**

Meagan White ([25:35](25:35)):

Okay, well hopefully without me.

Officer Canady ([25:35](25:35)):

**And that's- that's largely up to you, okay?**

Meagan White ([25:38](25:38)):

Yeah.

Officer Canady ([25:38](#)):
So-

Meagan White ([25:41](#)):
I- I mean...

Officer Canady ([25:41](#)):
**There's only one way I don't leave here without you.**

Meagan White ([25:43](#)):
**Yes.**

Officer Canady ([25:43](#)):
Okay? I want those guns.

Meagan White ([25:46](#)):
Okay. Um, can, I mean, can he tell you where they're at, though 'cause I-

Officer Canady ([25:53](#)):
He doesn't want to 'cause he knows-

Meagan White ([25:53](#)):
**I-**

Officer Canady ([25:53](#)):
He knows he's gotta deal with it.

Meagan White ([25:54](#)):
I- I honestly, I mean, unless there's something laying out, which I know, I mean, I hope there's nothing. I- I don't have any like, idea where he keeps it.

Officer Canady ([26:07](#)):
I have a- I have a really-

Meagan White ([26:08](#)):
I mean, he- he could keep 'em like, where, like probably in his garage, and like, I can't-

Officer Canady ([26:09](#)):
No, I have am, listen though, I have, no, I have a really good idea where they are.

Meagan White ([26:12](#)):

Okay then, do you wanna go look at- at that?

Officer Canady ([26:15](#)):
Mm-hmm (affirmative). Mm-hmm (affirmative).

Meagan White ([26:16](#)):
Do I have to have a warrant though, first-

Officer Canady ([26:18](#)):
Mm-mm (negative), nope.

Meagan White ([26:18](#)):
Before you guys come in and look for that, or-

Officer Canady ([26:19](#)):
Nope.

Meagan White ([26:20](#)):
'Cause it's not my house.

Officer Canady ([26:22](#)):
Nope.

Meagan White ([26:22](#)):
And it's not-

Officer Canady ([26:22](#)):
It's completely inviting me in. You live here, you invite me in, I'll go in and get 'em, and I leave you here, behind me. **The other alternative is, I take my investigation further and we see how it ends up. And I personally have a pretty good idea how it is going to end up.**

Meagan White ([26:46](#)):
Okay. Um ...

**Officer Canady ([26:47](#)):**
**Choice is yours.**

Meagan White ([26:47](#)):
I mean, I- I guess. I don't know ...